IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv201
(3:05cr74)

| | |
|---|---|
| MARION COX, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    <u>O R D E R</u> |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before this Court upon the following motions:

(1) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1);

(2) Respondent's Motion for Summary Judgment (Doc. No. 9);

(3) Petitioner's Motion for Summary Judgment or in the Alternative for Default Judgment and/or for Order Striking Any Answer and for Immediate Evidentiary Hearing and Decision on the Merits (Doc. No. 11);

(4) Petitioner's Motion for Judicial Notice (Doc. No. 17);

(5) Petitioner's Motion for Judicial Notice (Doc. No 18); and

(6) Petitioner's Motion to Amend Pursuant to Rule 15(c)(2) (Doc. No. 19).

I.     FACTUAL AND PROCEDURAL BACKGROUND

A.     Pretrial Proceedings

On March 29, 2005, a grand jury returned a Bill of Indictment charging Petitioner with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Case No. 3:05cr74, Doc. No. 1). At his arraignment, Petitioner pled not guilty and requested a jury trial. (<u>Id.</u>, Doc. No. 5: Arraignment Order).

On August 11, 2005, before Petitioner's trial began, the Court held a hearing on his oral pro se motion for the withdrawal of counsel. Petitioner told the Court that he was dissatisfied because counsel had spent too much time trying to get him to inform on drug dealers and had failed to interview the "character witnesses" whom Petitioner had identified. (Id., Doc. No. 43: Pretrial Tr. at 2-3). In response, defense counsel noted that if convicted, Petitioner would face sentencing as an armed career criminal and, for that reason, he had spoken with him about cooperating with authorities. (Id. at 3). Counsel also told the Court that Petitioner's case was "pretty straightforward" and would come down to the officers' testimony. (Id. at 3). Counsel reported that he spoke with those officers and determined that their statements were consistent with the information in the Government's discovery file; therefore, counsel believed that cooperation was a "fruitful" strategy for Petitioner. (Id. at 3-4). The prosecutor agreed that the facts of Petitioner's case were simple and reported that he had been in close consultation with counsel regarding an opportunity for Petitioner to cooperate and avoid a possible term of 15 years to life imprisonment. (Id. at 6).

The Court determined that counsel had interviewed the relevant potential witnesses and had conducted a thorough investigation. (Id. at 6). Nonetheless, Petitioner continued his complaints, asserting that counsel also had failed to file more than one pretrial motion and had failed to seek a polygraph examination on the grounds that one of Petitioner's witnesses had died and, therefore, was unavailable to testify. (Id. at 7). The Court advised Petitioner that results from polygraph examinations are inadmissible and that his denial of the officers' anticipated testimony would best be handled by defense counsel on cross-examination. (Id. at 8). Therefore, the Court found that Petitioner was being effectively represented and denied his motion. (Id. at 8).

B.      Trial

At trial, the Government presented testimony from three Charlotte-Mecklenburg Police officers with combined experience of 49 years and a fingerprint expert. (Case No. 3:05cr74, Doc. No. 39: Trial Tr. at 62, 86, 92 and 96). The Government's evidence established that on the morning of December 25, 2004, Officers Todd Mozingo and John Heifner were dispatched to answer a call concerning a disturbance at Steve Mason's home on Pamlico Street in Charlotte. (Id. at 62-63 and 92). Officer Mozingo was first to arrive at the scene. (Id. at 92). Upon his arrival, Officer's Mozingo was waved down by Mason who was found in the middle of the street. The officer also saw Petitioner standing alone on Mason's front porch (Id. at 63-64). Mason told the Officer why he had called the police. (Id. at 64).

As a result of what he was told,[1] Officer Mozingo told Petitioner to come down and stand by his police car during the investigation. (Id. at 64-65). Petitioner initially complied with that request. (Id. at 65). After learning that a gun was in the area, Officer Mozingo went onto the porch and found a loaded pistol in a small, unzipped plastic case. (Id. at 66-67). The pouch was in a flower pot that was located within arm's reach of where Petitioner had been standing. (Id. at 66). Officer Mozingo initially testified that Petitioner fled the scene while he was talking with Mason; however, after he reviewed his incident report, the officer testified that Petitioner fled when he retrieved the pistol. (Id. at 65, 67 and 81). Officer Mozingo then told Officer Heifner, who was arriving on the scene, about Petitioner's flight and gave his description. (Id. at 67 and 92).

Officer Heifner spotted Petitioner running away and tracked him to another house on Pamlico Street. Id. at 68). Officer Mozingo also went to that house and was joined by Officer

---

[1] Officer Mozingo was not permitted to testify about what Mason said.

John Collins.  (Id. at 96).  Officers Mozingo and Collins went to the front, where Officer Mozingo beat on the door and demanded that Petitioner come out.  (Id. at 68 and 96-97).  After Officer Mozingo told an occupant that he could be charged with aiding and abetting and harboring a fugitive, Petitioner came out and was placed under arrest.  (Id. at 68 and 97).  Officers Mozingo and Collins walked Petitioner a patrol car, where Officer Mozingo searched him.  (Id. at 68 and 97).  During that search, Petitioner apologized for pointing a gun at Mason and told the officers that he did not mean to have a gun.  (Id. at 68-69 and 97).  Officer Heifner was stationed at the rear of the house and did not assist with Petitioner's arrest or search.  (Id. at 93).

Officer Mozingo identified Petitioner in court as the only person he saw on the porch and identified the pistol as the one he retrieved from the flower pot.  (Id. at 63 and 69).  Officer Mozingo's testimony was largely corroborated by Officers Heifner and Collins.  The Government's fingerprint expert testified that no latent prints were found on the pistol.  (Id. at 85-86 and 88).   Last, the Government introduced the parties' stipulations that the pistol had traveled in interstate commerce, and that Petitioner was a convicted felon who was prohibited from possessing a firearm.  (Id. at 101).

The Court denied defense counsel's motion to strike the officers' testimony concerning Petitioner's confession under Miranda,[2] finding that the uncontradicted testimony showed that Petitioner had "blurted out" his confession without being questioned.  (Id. at 105).  The Court also denied Petitioner's motion to dismiss his case.  (Id.  at 107).  After the Court advised Petitioner of his right to testify and ensured that he understood that right, Petitioner declined to testify.  (Id. at 115).

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

The Court charged the jury and sent them to deliberate. (Id. at 144-46). During those deliberations, the jury asked to review Officer Mozingo's report. (Id. at 146). After conferring with the attorneys and noting that the report was not in evidence, the Court denied that request. (Id. at 146). Ultimately, the jury convicted Petitioner of the charge. (Case No. 3:05cr74, Doc. No. 18: Jury Verdict).

On August 18, 2005, Petitioner filed a pro se Motion for Reconsideration of the jury's verdict based upon allegations of ineffective assistance of counsel. (Id., Doc. No. 20). On November 8, 2005, the Court denied the Motion on the ground that the claim was not cognizable because Petitioner had not yet been sentenced. (Id., Doc. No. 21). On December 5, 2005, defense counsel filed a Motion to Review Counsel noting that he had no personal or professional objection to continuing but wanted the Court to decide whether he should continue in light of Petitioner's complaints. (Id., Doc. No. 22). On December 9, 2005, the Court entered an Order finding that Petitioner's complaints did not warrant the appointment of new counsel. (Id., Doc. No. 23).

C.     Sentencing

On February 27, 2006, the Court held Petitioner's sentencing hearing. Defense counsel raised several objections, including that Petitioner could not be sentenced as an armed career criminal because there was no evidence that his prior North Carolina felony escape conviction involved violence and because that conviction was not listed in the Indictment as a prior felony. (Id., Doc. No. 37: Sent. Tr. at 10-12). The Court overruled those objections on its finding that, using the categorical approach, the conviction was a violent felony and that the law only required that Petitioner's predicate convictions be listed in his Presentence Report (PSR). (Id. at 10-12).

Petitioner told the Court that his childhood was negative and involved years of addiction; however, he had been drug free since 2001 and was trying to become a law-abiding citizen since his 2004 release from prison. (Id. at 18-20). Petitioner concluded by asking the Court to take his efforts to reform his life and his age into its consideration of his sentence. (Id. at 21).

The Court adopted the calculations in the PSR of a total offense level of 34, criminal history category VI, and advisory range of 262 to 327 months. (Id. at 15). The Court sentenced Petitioner to 262 months' imprisonment. (Case No. 3:05cr74, Doc. No. 31: Judgment).

D.    Appeal

Petitioner timely appealed to the United States Court of Appeals for the Fourth Circuit. (Id., Doc. No. 29). With the assistance of newly appointed counsel, Petitioner argued that the evidence was insufficient to show that he possessed the pistol. United States v. Cox, 218 F. App'x 257, 258 (4th Cir. Feb. 20, 2007). The Court of Appeals held that "the Government presented sufficient evidence to support the trustworthiness of [Petitioner's] admission to the police and that sufficient evidence supported [Petitioner's] conviction." Id. at 259.

E.    Collateral Review

On May 2, 2008, Petitioner timely filed the instant Motion to Vacate claiming that his trial attorney was ineffective for failing: (1) to interview, investigate, and to subpoena witnesses; (2) to object under Miranda to the admission of his inculpatory statement, or to file a motion to suppress that statement; (3) to challenge the use of his breaking and entering conviction as a predicate violent felony, or to object to the Court's reliance upon prior convictions which were not proven to a jury beyond a reasonable doubt; and (4) to object to the Court's decision not to allow the jury to review Officer Mozingo's report, or to admit the report into evidence. (Doc. No. 1 at 4-16). In addition, Petitioner alleges that counsel was ineffective for having made certain statements during his closing argument. (Id. at 15).

On September 18, 2008, Respondent filed an answer, with an affidavit from trial counsel, arguing that Petitioner had failed to allege facts sufficient to create a genuine issue of material fact regarding the attorney's performance and any resulting prejudice in support of that motion. (Doc. No. 7). Thus, Respondent also filed a Motion for Summary Judgment asserting that it is entitled to judgment as a matter of law. (Doc. No. 9).

On December 31, 2008, the Court entered an Order and Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to respond to Respondent's motion with his own affidavits or unsworn declarations. (Doc. No. 10). While Petitioner filed a Motion for Summary Judgment (Doc. No. 11), he never filed an affidavit, unsworn declaration, or other documentary evidence in opposition to Respondent's Motion for Summary Judgment or in support of his own Motion for Summary Judgment.

For the reasons that follow, Respondent's Motion for Summary Judgment will be granted; Petitioner's Motion for Summary Judgment, Motion to Vacate, and other various motions will be denied.

II.   STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether a petitioner is entitled to any relief. If the motion is not dismissed after that initial review, the Court must direct the government to respond. Id. The Court must then review the government's answer and any materials submitted by the parties to determine whether an evidentiary hearing is warranted pursuant to Rule 8(a). Upon review, the Court has concluded that a hearing is not required. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

Additionally, summary judgment is appropriate in those cases where there is no genuine

7

dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying standard to motion to vacate). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations, or denials of allegations, in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

A. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In determining reasonableness, there is a strong presumption that counsel's

8

conduct was within the wide range of reasonable professional assistance.  Id. at 689; see also Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).  Thus, the Court must be "highly deferential in scrutinizing [the attorney's] performance and must filter the distorting effects of hindsight from [its] analysis."  Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

The petitioner "bears the burden of proving Strickland prejudice."  Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 725 F.2d 1425, 1430-31 (4th Cir. 1983)).  In the event that he fails to meet this obligation, a "reviewing court need not consider the performance prong." Id. at 1290.

          1.      Witnesses Investigation

By his first and seventh claims, Petitioner alleges that counsel failed to investigate potential witnesses, including two different officers, Steve Mason, and Evangelyn Hill.  Hill reportedly was present when the officers arrived and would have testified that Petitioner did not possess a gun and did not confess to the officers.  (Doc. No. 1 at 4, 15).  Petitioner also alleges that counsel failed to subpoena witnesses whose testimony would have corroborated his claims of innocence and silence.  (Id. at 15).  Respondent contends that Petitioner's allegations are not supported with the necessary documentary proof and are otherwise belied by defense counsel's affidavit and the record evidence.  (Doc. No. 7 at 9-13).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland v. Washington, 466 U.S.668, 691 (1984).  Thus, "[t]he Sixth Amendment does not always compel counsel to undertake interviews and meetings with potential witnesses where counsel is familiar with the substance of their testimony."  Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1993) (citation omitted).  In evaluating whether counsel acted reasonably, the Court should:

9

> "[A]ppreciate the practical limitations and tactical decisions that trial counsel faced . . . . Particularly when evaluating decisions not to investigate further, [the Court] must regard counsel's choices with an eye for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

Id. at 581 (internal citations omitted).

Petitioner does not identify the two officers whom he believes his attorney should have interviewed or investigated. Furthermore, the record evidence shows that counsel interviewed the three officers who directly were involved in this incident. (Case No. 3:05cr74, Doc. No. 43: Pretrial Tr. at 3-4; Doc. No. 39, Trial Tr. at 50-52). These officers are the ones who observed Petitioner near the weapon, flee the scene and/or confess his guilt. Petitioner also does not indicate what favorable testimony he believes these other two officers could have provided. Similarly, Petitioner alleges that counsel should have interviewed Mason but does not indicate what favorable information he believes Mason would have provided for his defense. No evidence shows that Hill was actually at the scene, as Officer Mozingo testified that he did not see anyone in the area while he was investigating this incident. (Id., Doc. No. 39, Trial Tr. at 64). The absence of any showing that further investigation would have altered the result of the trial, combined with the substantial evidence of his guilt, results in the Court finding that Petitioner is not entitled to relief on this claim.

The record also contains Petitioner's pretrial representations to the Court that counsel failed to investigate certain "character witnesses" whom he wanted counsel to contact, although Petitioner did not identify them by name. (Id., Doc. No. 43: Pretrial Tr. at 2). Counsel's affidavit states that he does not recall Petitioner discussing Hill as a character witness. (Doc. No. 7-1 at 1). Even so, even if Hill was a potential character witness, Petitioner has not shown prejudice or deficient performance because the record fails to establish that she was a crucial

witness. Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1993) (rejecting claim of ineffectiveness based upon counsel's alleged failure to interview persons whom defendant identified as "just character witnesses.") (internal quotation marks omitted). Therefore, this claim is without merit.

Petitioner's allegation that counsel failed to subpoena Hill and Mason does not warrant relief. (Doc. No. 1 at 15). "'The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.'" Harvey, 2011 WL450067 at * 5 (quoting United States v. Neresian, 824 F.2d 1294, 1321 (2d Cir. 1987). Such decisions also are entitled to great deference. Strickland v. Washington, 466 U.S. 668, 690 (1984) (Decisions undertaken as part of an informed trial strategy are "virtually unchallengeable" in light of the "strong presumption" of reasonableness that arises in such cases.). Furthermore, the law is equally clear that a reviewing court should view a claim of ineffective assistance of counsel based upon a failure to subpoena witnesses with "great caution" where the petitioner does not provide the court with any affidavits from the potential witnesses. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001) ("Where the only evidence of a missing witness's testimony is from the defendant, th[e] Court views claims of ineffective assistance with great caution.").

In the instant case, Petitioner has failed to present affidavits from Hill or Mason. In fact, as noted above, the record evidence fails to show that Hill actually was an eyewitness to this incident. The only evidence tending to show how Mr. Mason may have testified reflects that he identified Petitioner as the person who aimed a gun at him and threatened to kill him. (PSR at ¶ 10). Thus, there is no reason to believe that either witness would have altered the trial result. The record also contains defense counsel's affidavit wherein he reports his belief that Petitioner

11

benefitted from Mason's absence. (Doc. No. 7 at 1). During the trial, counsel attempted to exploit Mason's absence by arguing for acquittal because Mason's testimony was a missing piece of the Government's case. (Case No. 3:05cr74, Doc. No. 39: Trial Tr. at 128).

Thus, the record is clear that Petitioner is not entitled to relief on his claim that counsel failed to investigate, interview, and subpoena witnesses.

        2.        Petitioner's Statements

Next, Petitioner claims that counsel was ineffective for allegedly failing to seek suppression of his statement under Miranda. (Doc. No. 1 at 5 and 7). Respondent contends that counsel did seek to exclude the confession under Miranda and that Miranda was not implicated because Petitioner "blurted out" his confession. (Doc. No. 7 at 11).

"The Miranda Court formulated a warning that must be given to suspects before they can be subjected to custodial interrogation." Berghuis v. Thompkins, 130 S.Ct. 2250, 2259 (2010). However, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the Miranda] holding." Miranda v. United States, 384 U.S. 436, 478 (1966). Thus, spontaneously made statements are not the product of interrogation and are not barred by the Fifth Amendment. Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980); United States v. Wright, 991 F.2d 1182, 1186-87 (4th Cir. 1993) (citing Innis and affirming the admission of a spontaneously made statement concerning the ownership of a firearm).

The evidence in the record establishes that Petitioner was not being questioned when he made his confession. (Case No. 3:05cr74, Doc. No. 39: Trial Tr. at 69 and 97). Counsel did attempt to have the testimony regarding that confession excluded under Miranda, but the Court denied that motion. (Id.. at 105). Therefore, it is clear that Petitioner is not entitled to relief on this claim.

3. Prior Convictions

Petitioner claims that counsel was ineffective for failing to object to the use of his prior breaking and entering conviction as a predicate offense under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and for failing to challenge the Court's inclusion of convictions that were not proven to a jury beyond a reasonable doubt. (Doc. No. 1 at 8 and 16). Respondent contends that notwithstanding Petitioner's failure to explain why he believes the conviction did not qualify as a predicate offense, the record shows that counsel did argue that it was not a predicate offense; and that there is no requirement that a defendant's prior convictions be proven to a jury beyond a reasonable doubt before they can be used at sentencing. (Doc. No. 7 at 12 and 14).

The record reflects that defense counsel did, in fact, raise the issue of whether Petitioner's prior escape and breaking and entering convictions qualified as violent felonies. He most directly argued about the escape conviction, which the Court found was a violent felony using the categorical approach. (Case No. 3:05cr74, Doc. No. 37: Sent. Tr. at 10). Thus, Petitioner's claim that counsel did not challenge this matter is factually baseless.

North Carolina's escape statute, N.C.G.S. 148-45, can be violated byl escape from confinement, § 148-45(a) and (b), and failure to return to confinement following work release, § 148-45(g). Likewise, the state's burglary statutes cover homes, N.C.G.S. § 14-51; other buildings, § 14-54; and vehicles, § 14-56. Where a statute includes violent and non-violent ways of committing an offense, a sentencing court may look to the charging documents, jury instructions, plea agreement, plea colloquy, and other judicial records to determine the nature of the prior conviction for purposes of § 924(e). Taylor v. United States, 495 U.S. 575, 602 (1990).

Respondent has moved for summary judgment, triggering Petitioner's obligation to produce some evidence supporting his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

13

248 (1986). Here, Petitioner has not provided any evidence to show that his prior convictions for escape and breaking and entering do not qualify as violent felonies under § 924(e). His assertion that he walked away from a work release program is insufficient to carry his burden on the escape charge. Anderson, 477 U.S. at 256 (non-movant may not rest on mere allegations in his pleading). Additionally, the PSR details other convictions for serious drug offenses that could serve as predicate crimes which are not challenged by Petitioner.[3] Accordingly, the Court finds that Petitioner has not shown any reason to believe the sentence would have been different if counsel had argued as suggested. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (to establish ineffective assistance of counsel at sentencing, a petitioner must show, at a minimum, a "reasonable probability that his sentence would have been more lenient" but for counsel's errors).

Further, counsel was not ineffective for failing to assert that Petitioner's prior convictions had to be proven to the jury. That claim is foreclosed by United States v. Washington, 629 F.3d 403, 410 (4th Cir. 2011) (no Sixth Amendment or due process violation when judge finds facts about prior convictions for § 924(e) enhancement). Accordingly, the record is clear that Petitioner is not entitled to relief on this claim.

    4.    Officer Mozingo's Report

Petitioner claims that counsel erroneously failed to challenge the Court's decision not to allow the jury to review Officer Mozingo's written report, and failed to admit his report into evidence. (Doc. No. 1 at 14). Respondent asserts that because the report was not admitted into

---

[3] See e.g. Case No. 87CRS082014, Possession with Intent to Manufacture and Sell Schedule I Controlled Substance (PSR at ¶ 37); Case No. 94CRS90084, Possession with Intent to Sell Heroin (PSR at ¶ 47); Case No. 01CRS46961, Sell Cocaine (PSR at ¶ 52).

evidence, the jury was not entitled to review it during their deliberations. (Doc. No. 7 at 13). Furthermore, Respondent points to defense counsel's affidavit wherein he asserts that he did not seek the admission of the report because he preferred to take advantage of the inconsistency in the related portion of Officer Mozingo's testimony. (Doc. No. 7-1 at 2-3). Counsel further noted his efforts to exploit that inconsistency in order to create confusion and contradictions, and that it would not have been in Petitioner's interest to introduce a report that supported the most damaging version of the officer's testimony: that Petitioner fled when the officer found the gun. (Id.).

A jury is permitted to consider only those exhibits which have been admitted as evidence. See United State v. Lentz, 383 F.3d 191, 213 (4th Cir. 2004) ("[O]nly admitted evidence goes to the jury at the conclusion of the trial."). Because the report was not admitted into evidence, counsel had no ground to challenge the Court's decision. Furthermore, the Court finds that counsel's strategic decision to exploit the inconsistency in Officer Mozingo's testimony was not constitutionally deficient because admission of the report would have bolstered the testimony that Petitioner fled when the gun was found. Moreover, the written report was inadmissible hearsay and only usable as a prior inconsistent statement, not substantive evidence. Fed. R. Evid. 613, 801, 802; United States v. Midgett, 488 F.3d 288, 299 (4th Cir. 2007). Thus, Petitioner has failed to show that there is a reasonable probability that the outcome of his trial would have been different but for counsel's performance .

5. Closing Argument

Last, Petitioner claims that his attorney failed to function as the Government's adversary when he conceded during his closing argument that he was not attacking the credibility of the officers' testimony. (Doc. No. 1 at 15). Petitioner argues that counsel's statement lessened the

Government's burden of proof on the element of possession and on his confession. (Id.). Respondent argues that there was no evidence to suggest that Officer Mozingo's inconsistent testimony was the result of anything other than an honest mistake. (Doc. No. 7 at 13-14). Therefore, it was not unreasonable for counsel not to characterize the officers as bad people and to instead suggest that the officer was mistaken about Petitioner's conduct due to the "chaotic and unravel[ing]" conditions with which they were confronted. (Id.).

The record shows that the Court instructed the jury that the Government had the burden of proving Petitioner's guilt beyond a reasonable doubt and, in particular, to prove that he knowingly possessed the firearm that was identified in the Indictment; that Petitioner had "no burden whatsoever" but instead enjoyed the presumption of innocence which could not be overcome unless the Government met its burden of proof; and that the jury was the sole judge of both the facts of the case and the credibility of the witnesses, and was free to believe all, part or none of a witnesses' testimony. (Case No. 3:05cr74, Doc. No. 39: Tr. T at 116, 118,120-21 and 139).

Once a jury is properly and fully instructed, the jury "'is presumed . . . to follow its instruction.'" McHone v. Polk, 392 F.3d 691, 708 (4th Cir. 2004) (quoting Weeks v. Angelone, 528 U.S. 225, 234 (2000)). Petitioner has failed to point to any evidence to suggest that these instructions were not followed. Therefore, Petitioner has not shown any reason to believe that he was prejudiced by counsel's argument.

C. Other Motions

    1. Petitioner's Motion for Summary Judgment

On January 21, 2009, Petitioner filed a motion seeking to strike Respondent's allegedly late Response to his Motion to Vacate and asking for default judgment in his favor. (Doc. No. 11). However, on December 21, 2010, the Court had granted Respondent's Motion for Leave to File Response Out of Time based on trial counsel's difficulty in providing an affidavit and Petitioner's lack of objection to the motion. (Doc. No. 8: Motion; Doc. No. 10: Order). Thus, Petitioner waived his opportunity to object to the extension and this issue is without merit

    2. Motion for Judicial Notice and Motion to Amend and Supplement

On November 20, 2009, Petitioner filed a motion for the Court to take judicial notice of the Supreme Court's decision in Chambers v. United States, 555 U.S. 122 (2009). (Doc. No. 17). On September 2, 2010, Petitioner filed a motion seeking to supplement his proposed Chambers claim with a citation to Begay v. United States, 553 U.S. 137 (2008). (Doc. No. 19). Petitioner asserts that his sentence is void because his prior felony escape conviction no longer qualifies as a violent felony under the Armed Career Criminal Act.

Although the Fourth Circuit has not yet held that Chambers and Begay applies retroactively in collateral proceedings, other courts have.[4] Assuming that the Fourth Circuit would apply those decisions retroactively, Petitioner would still not be entitled to relief. As detailed above regarding counsel's performance in arguing against the prior convictions, no evidence in the record suggests that Petitioner's conviction for escape was not a violent felony,

---

[4] See e.g. Sun Bear v. United States, — F.3d —, 2011 WL 2683183, at *2 (8th Cir. July 12, 2011); Navarez v. United States, 641 F.3d 877, 880 (7th Cir. 2011); United States v. Shipp, 589 F.3d 1084, 1089 (10th Cir. 2009).

and Petitioner has other unchallenged convictions for serious drug crimes which would qualify him as an armed career criminal. Therefore, he is clearly not entitled to relief on this issue.

3. Motion for Judicial Notice

On February 26, 2010, Petitioner filed a motion (Doc. No. 18) asking the Court to take judicial notice that Respondent failed to respond to his Motion for Default or Summary Judgment (Doc. No. 11), warranting relief in his favor. The Court has found Petitioner's claim for default or summary judgment to be without merit; therefore, his claim based on Respondent's lack of response to that claim is without merit.

IV. CONCLUSION

After reviewing the entire record in the light most favorable to Petitioner, the Court finds no genuine issues of material fact such that a rational trier of fact could find that Petitioner is entitled to relief on any of his claims.

**IT IS, THEREFORE, ORDERED** that:

(1) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**;

(2) Respondent's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

(3) Petitioner's Motion for Summary Judgment or in the Alternative For Default Judgment and/or for Order Striking Any Answer and For Immediate Evidentiary Hearing and Decision on the Merits (Doc. No. 11) is **DENIED**;

(4) Petitioner's Motion for Judicial Notice (Doc. No. 17) is **DENIED**;

(5) Petitioner's Motion for Judicial Notice (Doc. No. 18) is **DENIED**; and

(6) Petitioner's Motion to Amend and Supplement (Doc. No. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: August 2, 2011

Robert J. Conrad, Jr.
Chief United States District Judge